# Order

Michigan Supreme Court
Lansing, Michigan

May 1, 2020

Bridget M. McCormack,
Chief Justice

David F. Viviano,
Chief Justice Pro Tem

Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh,
Justices

160351

PEOPLE OF THE STATE OF MICHIGAN,
        Plaintiff-Appellant,

v

VIRGIL SMITH,
        Defendant-Appellee.

SC:  160351
COA:  349563
Wayne CC:  15-005228-FH

_____/

On order of the Court, the application for leave to appeal the August 15, 2019 order of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should now be reviewed by this Court.

CLEMENT, J. (*concurring*).

I concur in the Court's denial of leave to appeal, but I write separately to note that I do so specifically because of the interlocutory posture of this case.  The Court of Appeals denied leave to appeal because plaintiff failed to show a need for *immediate* appellate review, and this Court denies leave because it is not persuaded that the question presented should *now* be reviewed.  I believe Justice MARKMAN has raised a number of fair concerns, which I take very seriously.  I concur in denying leave not because I disagree with his concerns, but rather because I believe the development of a trial court record will facilitate appellate review of these issues.

MARKMAN, J., (*dissenting*).

I once again dissent in this matter.  Defendant, a former state senator, discharged a rifle at his ex-wife's car and into the air in her presence, and the prosecutor consequently charged him with felonious assault, MCL 750.82; domestic violence, MCL 750.81(2); malicious destruction of personal property (valued at $20,000 or more), MCL 750.377a(1)(a)(*i*); and possessing a firearm during the commission of a felony (felony-firearm), MCL 750.227b.  In February 2016, the prosecutor and defendant entered into a plea agreement whereby defendant would plead guilty to malicious destruction of personal property (valued at $20,000 or more), serve 10 months in jail, serve five years of probation, resign his position as a state senator, not "hold elective or appointed office during full pendency of probation," and comply with other miscellaneous terms that are not relevant here.

The trial court accepted the agreement and defendant pleaded guilty. However, at sentencing, the trial court sua sponte ruled that the resignation and "bar to office" terms of the plea agreement were unconstitutional and thus invalid. The prosecutor promptly moved to vacate the plea, explaining at the motion hearing that "our position is if the Court could not go along with it then you should allow us the opportunity to withdraw the plea because that is not what we bargained for." The trial court nonetheless refused to allow the prosecutor to withdraw from the plea agreement and denied the motion. At about the same time, defendant resigned from the state senate. The prosecutor sought leave to appeal in the Court of Appeals, challenging both the trial court's decision sua sponte to invalidate the two terms of the agreement and, alternatively, its refusal to vacate the plea. The Court of Appeals granted leave in August 2016. However, in April 2017, the Court of Appeals dismissed the appeal, reasoning that "[b]ecause defendant voluntarily resigned his seat and appears to have no intention of running for public office during his term of probation, we decline to address the issues regarding the voiding of the plea agreement as moot." *People v Smith*, unpublished opinion per curiam of the Court of Appeals, issued April 18, 2017 (Docket No. 332288), p 2. In addition, the Court of Appeals ruled that vacating the plea despite the absence of these two terms would be "fundamentally unfair." *Id*. at 3.

Within hours of the Court of Appeals' decision, defendant filed petitions for a seat on the Detroit City Council (an election that he ultimately lost in November 2017). The prosecutor sought leave to appeal in this Court, and we remanded to the Court of Appeals as on reconsideration granted. *People v Smith*, 501 Mich 851 (2017). On remand, the Court of Appeals affirmed the trial court in all respects in a split decision. *People v Smith* (*On Remand*), 321 Mich App 80 (2017), rev'd in part 502 Mich 624 (2018). Judge RIORDAN in dissent would have concluded that the challenged terms of the agreement were not unconstitutional and, alternatively, that the trial court erred by refusing to vacate the plea. *Id*. at 104-105 (RIORDAN, P.J., dissenting). The prosecutor then sought leave to appeal in this Court, and we scheduled oral argument on the application. *People v Smith*, 501 Mich 852 (2017). Ultimately, a plurality of this Court adopted the rationale of a decision of the United States Court of Appeals for the Ninth Circuit concerning "public policy," *Davies v Grossmont Union High Sch Dist*, 930 F2d 1390 (CA 9, 1991)-- what I view to be an aberrant decision in support of an unusually broad exercise of the judicial power-- in holding that the bar-to-office term was unconstitutional. *People v Smith*, 502 Mich 624, 634-635 (2018) (opinion by VIVIANO, J.). In addition, a majority of this Court held that the issue concerning the resignation term was moot and that the trial court had erred in not vacating the plea, and it accordingly remanded to the trial court for further proceedings. *Id*. at 628 (opinion by VIVIANO, J.); *id*. at 648-649 (CLEMENT, J., concurring). Justice ZAHRA and myself concurred with the majority only with respect to the mootness of the resignation term and dissented with respect to the invalidity of the bar-to-office term. *Id*. at 659 (MARKMAN, C.J., concurring in part and dissenting in part).

On remand, the prosecutor offered to accept defendant's plea to malicious destruction of personal property (valued at $20,000 or more) and felonious assault in exchange for the dismissal of the domestic violence and felony-firearm charges. The plea offer would have also required a "probationary period" but no additional jail time.

Defendant then filed a motion to dismiss the case, asserting that the prosecutor, by requiring him to plead guilty to two felonies in the plea offer, was acting in a "vindictive" manner because he had run for a seat on the Detroit City Council. The trial court held that defendant established a prima facie case of actual prosecutorial vindictiveness on the basis of the following three facts: (1) for a period of time in 2016, the prosecutor refused to engage in plea bargaining in cases pending before the trial judge involved in this case; (2) the prosecutor informed the media in the early stages of this case that her office ordinarily does not dismiss felony-firearm charges when the firearm is discharged in the course of the crime but that she supported dismissal of that charge in this case because of defendant's mental health issues; and (3) the prosecutor was upset that the trial court refused to enforce the entirety of the original plea agreement. The trial court thus ordered an evidentiary hearing, at which the prosecutor will presumably be required to testify as to the basis of her plea negotiations in this case. The prosecutor sought leave to appeal in the Court of Appeals, which the panel denied by a 2-1 vote, *People v Smith*, unpublished order of the Court of Appeals, entered August 15, 2019 (Docket No. 349563), and now seeks leave to appeal in this Court.

"It is a violation of due process to punish a person for asserting a protected statutory or constitutional right." *People v Ryan*, 451 Mich 30, 35 (1996). "Such punishment is referred to as prosecutorial vindictiveness. There are two types of prosecutorial vindictiveness, presumed vindictiveness and actual vindictiveness." *Id.* "Actual vindictiveness will be found only where objective evidence of an 'expressed hostility or threat' suggests that the defendant was deliberately penalized for his exercise of a procedural, statutory, or constitutional right." *Id.*, quoting *United States v Gallegos-Curiel*, 681 F2d 1164, 1168 (CA 9, 1982). As the United States Supreme Court has explained, "for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.' " *Bordenkircher v Hayes*, 434 US 357, 363 (1978), quoting *Chaffin v Stynchcombe*, 412 US 17, 32 n 20 (1973). "But in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." *Bordenkircher*, 434 US at 363.

As an initial matter, it is questionable whether seeking a seat on the Detroit City Council, a right that is outside of the criminal justice system, constitutes the type of a "statutory or constitutional right" that can establish the basis for a claim of prosecutorial vindictiveness. See *Maddox v Elzie*, 345 US App DC 58, 67 (2001) ("In the prosecutorial context, the doctrine precludes action by a prosecutor that is designed to penalize a defendant for invoking any legally protected right *available to a defendant during a criminal prosecution*.") (emphasis added); *United States v Raymer*, 941 F2d 1031, 1041 (CA 10, 1991), quoting *United States v Goodwin*, 457 US 368, 384 (1982) ("The question is whether the federal prosecution was 'a direct and unjustifiable penalty for the exercise of a procedural right' by the defendant."). But even more pertinently, the three facts of this case specifically addressed by the trial court do not justify the extraordinary judicial action of requiring the prosecutor to justify in open court her rationale for engaging in a particular course of plea negotiations.

First, the fact that the prosecutor had instituted a "no plea" policy in the trial judge's courtroom for a brief period of time in 2016 bears no logical relationship, one way or the other, to the alleged vindictiveness against defendant himself. It was the trial judge's decision sua sponte to invalidate two terms of the plea agreement, but not to allow the prosecutor to withdraw from the agreement, that initially led to the prosecutor's decision to institute a no-plea policy in that courtroom; defendant was entirely a bystander and could have felt no reasonable sense of aggrievement from the no-plea policy. Possibly the prosecutor's decision was motivated by animus toward the trial judge, or, at least as possibly, the prosecutor was genuinely, and perhaps even rightly, concerned about entering into plea agreements before a judge who would sua sponte void their terms but not afford the prosecutor relief in reassessing the agreements.

Second, the fact that the prosecutor informed the news media in the early stages of this case that notwithstanding her office's usual position of retaining felony-firearm charges where factually warranted, she supported dismissal of the felony-firearm charge here because of defendant's mental health issues, is equally as irrelevant as the first fact referenced by the trial court. "Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, 'the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation' so long as 'the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.' " *Bordenkircher*, 434 US at 364, quoting *Oyler v Boles*, 368 US 448, 456 (1962) (alteration in original). There is nothing to suggest that the prosecutor here applied such an unjustifiable standard in declining to immediately dismiss the felony-firearm charge after this Court's remand to the trial court in 2018. Indeed, the plea offer from the prosecutor during the second round of negotiations would itself have resulted in dismissing the felony-firearm charge, as with the first round of negotiations, if defendant had accepted the plea offer and pleaded guilty to malicious destruction of personal property (valued at $20,000 or more) and felonious assault. The notion that the prosecutor should be "punished," or even chastised, in the instant proceedings for having earlier apprised the public that she was seeking to accommodate a defendant with mental health issues is highly peculiar, to say the least.

Third, I have little doubt that the prosecutor was both disappointed and upset when the trial court sua sponte invalidated part of the original plea agreement but refused to allow the prosecutor to withdraw from the agreement. But prosecutors are no strangers to failing to prevail on issues in trial courts, as well as before appellate courts, without thereby being compelled to testify in open court concerning how, and why, they chose to proceed in a matter after having failed to prevail on some issue. If this "fact," without more, can justify an evidentiary hearing on alleged prosecutorial vindictiveness, I discern no reason why an evidentiary hearing would not arguably be warranted in every case in which a prosecutor failed to prevail on a significant case or issue in dispute.

In any event, the relief sought by defendant in his present motion-- outright dismissal of the case-- is illogical. Such relief would mean that he will have been convicted of *no* criminal offenses where the import of his argument is merely that he should be able to plead guilty to only *one* offense, that to which he was originally

allowed to plead guilty, malicious destruction of personal property (valued at $20,000 or more). That is, defendant argues that because the prosecutor was vindictive in requiring him to plead guilty to two offenses in the second round of plea negotiations when he was only required to plead guilty to one offense in the first round of negotiations, he should now be able to avoid responsibility for *any* offense. But as with any alleged violation of due process, the remedy should be tailored to the error. *United States v Sarracino*, 340 F3d 1148, 1177 (CA 10, 2003) ("[E]ven a showing of actual vindictiveness does not necessarily warrant dismissal of the indictment."). Thus, for example, where the prosecutor originally charges the defendant with a misdemeanor offense and then vindictively retaliates against the defendant for exercising his appellate rights by charging him with a felony instead, the proper remedy is not complete dismissal of the case but rather precluding the prosecutor from proceeding with the felony charge. *Blackledge v Perry*, 417 US 21, 28-29 (1974) ("We hold, therefore, that it was not constitutionally permissible for the State to respond to Perry's invocation of his statutory right to appeal by bringing a more serious charge against him prior to the trial de novo."). Consequently, it is doubtful that the appropriate relief for defendant, even where he has prevailed, is to dismiss the case or direct the prosecutor to offer a plea agreement on identical or similar terms to the original plea agreement-- notwithstanding that the latter agreement is now entirely devoid of the two terms that were the principal subject of controversy in the previous round of litigation.

This final observation illustrates at its core the folly of the present proceeding. The prosecutor originally agreed to allow defendant to plead guilty to one felony, malicious destruction of personal property (valued at $20,000 or more), serve 10 months in jail, resign from the state senate, and not hold public office for a five-year period. Subsequently, after the prosecutor was unable to receive the benefit of the bar-to-office term by a divided decision of this Court, she reoffered essentially the same plea agreement to defendant but replaced the bar-to-office term with a new, second felony charge, felonious assault. And the trial court reasons that such a replacement charge constitutes "vindictiveness"-- in other words, that the process by which the prosecutor seeks, as best as she can, and in light of this Court's earlier decision, to replicate the overall public interest she believes was served by the original agreement is somehow "vindictive."

Such reasoning is circular and would render the holding of *People v Siebert*, 450 Mich 500 (1995), largely meaningless. In *Siebert*, we held that "a prosecutor may withdraw from a plea bargain that includes a sentence agreement when the court intends to impose a sentence lower than the agreement calls for." *Id*. at 504. But under the instant reasoning of the trial court, if the prosecutor seeks to withdraw from the agreement after the court has indicated that it will impose a less severe sentence and revert to the *status quo ante* as nearly as possible, such conduct is "vindictive." Thus, the prosecutor is effectively compelled to acquiesce in the less severe sentence, one that he or she presumably views as inadequate or disproportionate in some manner. Yet, as the United States Court of Appeals for the Fifth Circuit has aptly and rightly explained, "a prosecutor may, without explanation, refile charges against the defendant whose bargained- for guilty plea to a lesser charge has been withdrawn or overturned on appeal,

provided that an increase in the charges is within the limits set by the original indictment." *Jordan v Epps*, 756 F3d 395, 408 (CA 5, 2014).

The trial court here, first, invalidated several terms of a plea agreement entered into between the prosecutor and defendant, an invalidation never sought by either party; and, second, ordered the prosecutor to explain in open court the rationale for her subsequent plea offer to this defendant. The prosecutor objects that the latter decision is incompatible with what perhaps constitutes the fundamental authority of the executive branch of state government. See Const 1963, art 3, § 2; *Genesee Prosecutor v Genesee Circuit Judge*, 386 Mich 672, 684 (1972) ("For the judiciary to claim power to control the institution and conduct of prosecutions would be an intrusion on the power of the executive branch of government and a violation of the constitutional separation of powers."). For the reasons set forth herein, I would not deny leave to appeal but instead would reverse the trial court's order for an evidentiary hearing concerning prosecutorial vindictiveness and remand to that court for further proceedings.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

May 1, 2020



Clerk

s0428